IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**STEPHANIE GOREE** **PLAINTIFF**

**V.** **CIVIL ACTION NO.1:17-CV-93-SA -DAS**

**CITY OF VERONA, ET AL.** **DEFENDANTS**

**REPORT AND RECOMMENDATION**

This matter is before the court on the plaintiff's motion to reopen the case and reinstate it to the active docket [56] and on the defendants' motion to enforce settlement [58]. After considering the motions and conducting an evidentiary hearing, the undersigned recommends that the motion to reopen the case and reinstate it to the active docket [56] should be granted, and the motion to enforce the settlement agreement should be denied.

The plaintiff, who now goes by the name Stephanie Moffett, worked as a police officer with the City of Verona beginning in 2008. In this action she alleged gender discrimination, sexual harassment, and retaliation by the City and the individual defendant Long. In addition to this action, Goree has a pending Mississippi Workers Compensation claim for injuries sustained while working as an officer.

On November 12, 2019, the parties met for a private mediation. During that mediation it was made clear *by the defendant* that if there was to be a settlement, it would be an "omnibus settlement," or a "global settlement." In other words, the City of Verona was willing to negotiate but wanted to make certain that if they were to settle with Ms. Goree, they must necessarily settle both of her outstanding claims against them, the workers' compensation claim and the federal discrimination lawsuit. This has never been in dispute. Consequently, offers and counter-offers were made during the mediation with only single numbers going back and forth. The mediation

concluded with no resolution, but just a few days later, the defendants offered $145,000 to settle both claims and the plaintiff accepted the number.

Another aspect of the negotiations included how the lump sum would be allocated – that is, how much of the lump sum would be attributed to the workers' compensation claim and how much would be allocated to the federal lawsuit. Ms. Goree's attorney in the federal lawsuit wanted as little as could be allowed attributable to the federal lawsuit because the workers' compensation amount would not suffer the same tax consequences. The defendants were well aware of this, and during negotiations wanted to attribute $20,000 to the federal lawsuit and $125,000 to the workers' compensation claim. The plaintiff wanted even less attributable to the federal lawsuit – again – so Ms. Goree's tax liability would be lessened.[1] Eventually, the parties agreed that $1,000 would be attributable to the federal lawsuit and $144,000 would be attributable to the workers' compensation portion.

It is here the defendants believed they had the case resolved. They understandably believed they had the case resolved because there was an offer, an acceptance, and a confirmation email from the plaintiff's workers' compensation lawyer, Greg Harbison, saying, "Glad we were able to get this one worked out!" Harbison then followed that email with language to be included in the Petition and Order for Settlement for the plaintiff in her workers' compensation case.[2] That document provided for a settlement in the workers' compensation case

---

[1] Indeed, the plaintiff's attorney testified during the hearing that if possible, he wanted to settle the case and have no money at all attributable to the federal lawsuit. Because the defendants' attorneys wanted some consideration for each lawsuit, they would not agree to nothing being attributable to the federal lawsuit.

[2] The defendant spends a great deal of time and effort arguing about apparent authority, but the court does not see where authority is in dispute. Certainly, Harbison had authority to resolve the workers' compensation matter for his client, and Victor Fleitas had authority to resolve the federal litigation for her. The issue, however, for the court is not one of authority but whether anyone intended to settle the

for $144,000. Harbison ended the letter, explaining that the remaining $1,000 was consideration for dismissal of the federal litigation, and as such, that portion would not be included in the Petition going before the Commission. Harbison added this final paragraph to his letter, of course, because all parties fully understood that for either case to settle, both cases had to settle. The defendants were happy with the terms provided in Harbison's letter and sent back the final settlement documents utilizing exactly the same language.[3]

Unfortunately, this is when the problem began.

The problem as the court sees it is twofold. First, it appears the plaintiff did not fully understand at least some of the details of the agreement. As an example, it appears she was unaware that once she accepted the settlement proceeds, the compensation carrier would stop paying her medical providers for contested past medical expenses or any future medical expenses. When she understood this, she decided she would not sign the settlement documents submitted by the defendants. Second – and more important – was that one claim against the City of Verona arose out of workers' compensation, and unlike in the federal litigation, that settlement must be approved by the Mississippi Workers' *C*ompensation *C*ommission. Because the commission must approve settlements in workers' compensation cases, plaintiffs are much better able to change their minds or reject settlement documents when they do not understand every aspect of the agreement.[4]

---

federal litigation alone even if the workers' compensation case was not settled. After examining the matter and hearing the evidence presented during the hearing, it is abundantly clear that this was never the agreement or intent of anyone.

[3] The email referenced first was admitted into evidence during the hearing on the present motion as exhibit D-1. The Harbison correspondence with language to be included in the Petition is D-2.

[4] Settlement agreements must first be approved by the Mississippi Workers Compensation Commission, after a review of detailed information about the proposed settlement, including medical records and proof

Because the workers' compensation attorneys on both sides of this litigation were extremely familiar with this aspect of litigation, the workers' compensation aspect of the settlement was never even brought before the commission and is currently set for trial. What was left, of course, was the federal litigation, and the defendant now contends that it had a settlement for its portion and wants out after paying only the $1,000 attributable to it. Not surprisingly, the plaintiff objects to this amount, arguing that she agreed to attribute $1,000 to resolve the federal litigation only if she attributed $144,000 to the workers' compensation litigation. According to the plaintiff, once the compensation litigation fell through, the entire settlement necessarily fell through. In the words of her attorney, to allow the defendant to enjoy such a windfall in the federal litigation would be an "injustice." The court agrees.

During the hearing on this motion to enforce the settlement agreement, defense counsel in the federal litigation asked more than once whether a witness could point to any documentation that utilized the word "contingent" on whether the workers' compensation litigation must be approved. The witness could not point to the specific word; however, surely the parties can agree that common sense was likewise embedded in the settlement without using the term itself. Surely, all are aware that plaintiff's counsel in the federal litigation, Victor Fleitas – an aggressive litigator very familiar to this court and all involved in this litigation – *never* would have agreed to settle his lawsuit for $1,000 without the understanding that the workers' compensation litigation would be settled for the remaining $144,000. In fact as noted, it was the

---

the claimant has reached maximum medical improvement, so that the commission can determine if the proposed settlement is fair to the claimant . Miss. Workers Compensation Comm'n, Rule 2.15. "The settlement will not be approved if the Commission or administrative judge finds that the proposed settlement is not accurately reported in the papers, is not completely understood by the claimant, or is not in the best interest of the claimant." §6.50, Compromise Settlements, Miss. Workers Compensation Law (citing *Bailey Lumber Co .v. Mason*, 401 So. 2d 696 (Miss. 1981)).

City of Verona that first demanded that to settle either case, the parties must settle both cases against the City. That the City is now trying to lift specific language from emails and documents sent from the plaintiff's workers' compensation attorney that undoubtedly contemplated a global settlement appears disingenuous to the court – an attempt by the defendant to manipulate a situation to its advantage while ignoring any attempt at justice, or fair play, or common sense.

      In the end, the court finds that all parties agreed that for the federal litigation now before the court to settle, there must be a settlement of both that case and the workers' compensation litigation. It has never been disputed that the workers' compensation aspect of the litigation did not settle. Because it did not settle there could not have been a settlement of the present federal action. This is made clear for a number of reasons, the most glaring one being that the defendant is attempting to force a settlement of $1,000. This was simply never the plaintiff's intent, and the defendant knows it was not her intent. Perhaps there are federal actions that would settle for $1,000, but what is clear in this case is that the plaintiff agreed to such a paltry sum *only* because her attorney astutely wanted as little as could be attributed there. He understood that if she "accepted" $1,000 to settle her federal lawsuit, she would receive a significantly larger sum in the compensation case, and tax-wise that was to her benefit. While this court favors resolution by settlement, it will not force settlement on a party who never agreed or intended to agree to a resolution such as that suggested by the defendant.

## **CONCLUSION**

Accordingly, the undersigned recommends that the plaintiff's motion to reopen this case and restore the case to the active docket [56] be granted and that the defendants' motion to enforce the settlement agreement be denied.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72 (a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

This the 10th day of August, 2020.

                                                    **/s/ David A. Sanders**
                                                   **U.S. MAGISTRATE JUDGE**