IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

STEPHANIE GOREE                                                                    PLAINTIFF

v.                                                            CIVIL ACTION NO. 1:17-CV-93-SA-DAS

CITY OF VERONA, et al.                                                            DEFENDANTS

ORDER AND MEMORANDUM OPINION

Stephanie Goree initiated this action on June 23, 2017 by filing her Complaint [1] against the City of Verona and J.B. Long, in his individual capacity.[1] Goree alleges that she was subjected to sexual harassment and gender discrimination over a period of several years while she was employed with the City of Verona Police Department. The Defendants filed a Joint Motion for Summary Judgment [113], which has now been fully briefed. Having reviewed the filings and relevant authorities, the Court is prepared to rule.

*Factual and Procedural Background*

Goree was initially hired by the Verona Police Department as a part-time patrol officer in 2008. J.B. Long was the Interim Chief of Police at the time of Goree's hire, and Goree contends that Long began sexually harassing her shortly after her employment commenced. She avers that Long made numerous unwelcomed sexual remarks and touched her inappropriately on multiple occasions. As to the nature of the physical touching, Goree testified that Long touched her buttocks with his hand and his midsection but then apologized and acted as though it was inadvertent. According to Goree, she quit her job in 2008 due to Long's conduct, and she filed a Charge of Discrimination with the EEOC based upon the purported harassment. Goree testified that, before she quit, Long inappropriately touched her "maybe 11, 12" times. [113], Ex. A at p. 47.

---

[1] On November 22, 2019, the Court entered an Order [56] dismissing the case *without prejudice* by reason of settlement. However, the case was later reopened after the settlement was not completed.

While the Charge was pending with the EEOC, Leo Mask was hired as the new Police Chief. Shortly after Mask was hired, Goree reached an agreement with him to withdraw her Charge of Discrimination and return to work with the Verona Police Department. Mask served as Chief from approximately 2009 through January 2011, and Goree admits that she was not subjected to any harassment or discrimination during Mask's tenure as Chief. Mask left the Verona Police Department in 2011, and Anthony Anderson then assumed the role of Chief of Police.[2]

Goree contends that, although she helped Anderson get hired by the Police Department, after being named Chief, Anderson began making sexual remarks towards her, touched her on numerous occasions, and propositioned her for sex multiple times. Goree contends that this harassment occurred after Anderson's appointment to the role of Chief in January 2011. But she also admits that Anderson did not harass her after June or July of 2011, specifically testifying as follows:

> **Q.** So after, let's say, June or July of 2011, you didn't experience any other sexual harassment from Anthony Anderson, correct?
>
> **A.** No, sir, I did not.

[113], Ex. A at p. 70.

Thus, the harassment to which she was allegedly subjected by Anderson occurred during the time period of January 2011 through June or July 2011. Likewise, when questioned about whether Long's conduct during this period of time, Goree testified as follows:

> **Q.** Okay. Before we talk about Chief Johnson's short tenure as Chief, I just would also want to confirm with you that during Anderson's employment as Chief of Police, J.B. Long didn't do anything to you during that period of time that you considered to be sexually harassing, discrimination, or retaliation, correct?

---

[2] Although Long was removed as Interim Chief when Mask was hired, Long remained employed by Verona Police Department during Mask's tenure and at all times relevant to this action.

> **A.** Again, he did not.
>
> **Q.** And nobody else, other than Anderson, sexually harassed you during his tenure as Chief, correct?
>
> **A.** Right. Correct.

[113], Ex. A. at p. 71.[3]

Anderson resigned sometime around November 2014, at which time Bill Johnson was named Chief of Police. Regarding Johnson's tenure as Chief, Goree asserts that "Chief Johnson ran the police department professionally and did not tolerate gender discrimination. During Chief Johnson's tenure the Defendant Long did not engage in sexual harassment towards [Goree], largely due to Long working the day shift and [Goree] working the night shift." [128] at p. 4. However, Johnson resigned after only about three months.

After Johnson's resignation, Long re-assumed the role of Interim Chief and later became Chief in July 2015. Goree asserts that a few months after being named Chief, Long resumed harassing and discriminating against her. As to Long's appointment to Chief of Police, Goree asserts that the "City of Verona appointed the Defendant Long as Chief of Police despite complaints of sexual harassment and gender discrimination by [Goree]." [1] at p. 4. When questioned about the harassment to which she was subjected after Long was named Chief in July 2015, Goree stated:

> **Q.** So just for the record, when he became Chief of Police in July of 2015, after that point, he never physically touched you in a sexual way again, correct?
>
> **A.** No, sir, he did not.

---

[3] Goree also testified in her deposition that Anderson sent an inappropriate photo and text message to another employee, Sabrina Cox. However, she did not state when that conduct occurred. And despite a reference to it in the facts section of her Response Memorandum [128], she does not appear to pursue it as part of her hostile work environment claim, making no reference to it in the argument section of her Memorandum [128].

**Q.**    Okay. But you said he did make a number of sexual remarks to you?

**A.**    He did.

**Q.**    Okay. And you told me about the comment that he made. Tell me – just let – let's just break them down in order. What was the first sexual remark that you recall him making to you after he became Chief in July of 2015?

**A.**    Again, he told me that, you think that pussy still good since I lost weight.

**Q.**    And how many times did he tell you that?

**A.**    Just that one time.

**Q.**    Okay. And would that have been shortly after he became Chief?

**A.**    Yes, sir, because we was getting along – you know, trying to get along.

**Q.**    What was the next sexual remark he made to you?

**A.**    He told me he could have had that pussy a long time ago. And I told him, no, he couldn't.

**Q.**    And, again, was that in or around July of 2015?

**A.**    It was, maybe, a couple of months later when we were getting along trying to make the department work.

**Q.**    And what – what was the next sexual remark?

**A.**    Just those two.

**Q.**    Just those two, okay. So other than those two comments, Chief – J.B. Long didn't sexually harass you in any other way from July of 2015 through the present date, correct?

**A.**    No, sir, he did not.

[113], Ex. A at p. 98-100.

On January 28, 2016, Goree submitted to the City of Verona's Board of Aldermen a written grievance against Long, and Long thereafter submitted to the Board a written response. During a meeting on March 10, 2016, the Board of Aldermen went into executive session to address the grievance. Despite being given an opportunity to present witnesses or other evidence, Goree, who was represented by counsel at the meeting, did not do so. Long presented witnesses to testify in his favor. According to the minutes from the meeting, Goree's allegations were dismissed "due to lack of evidence." [113], Ex. 2.

Goree contends that "[a]fter making her last complaint of sexual harassment and gender discrimination," Long cut her hours, refused to allow her to work extra shifts and overtime, subjected her to a non probable cause and non random retaliatory drug screen, and forced her to drive and patrol in an unsafe patrol car. [1] at p. 5-6. She also contends that during this time period Long made discriminatory comments to her regarding her gender, specifically stating that women should not hold the position that she held within the Department. She does not specify how many times Long made comments of this nature but testified that he did so "several times." [113], Ex. A at p. 116.

Goree thereafter filed a Charge of Discrimination with the EEOC on September 27, 2016. In the Charge, she sets forth her allegations as to the sexual harassment to which she had been subjected dating back to 2008. She then filed her Complaint [1] against the City of Verona and J.B. Long (in his individual capacity) on June 23, 2017. In her Complaint [1], Goree asserts the following claims: (1) Title VII gender discrimination against the City of Verona;[4] (2) Title VII retaliation against the City of Verona; (3) denial of her Fourteenth Amendment right to Equal Protection against Long; and (4) retaliation in violation of her First and Fourteenth Amendment

---

[4] This claim includes two different theories: (1) discrimination based on specific, discrete actions; and (2) hostile work environment.

5

rights against Long. In their Joint Motion for Summary Judgment [113], the Defendants assert that each of Goree's claims should be dismissed.[5]

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Management of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1

---

[5] Although Goree was still employed with the Verona Police Department at the time she filed her EEOC Charge, she took workers compensation leave beginning on or about February 28, 2017 following an unrelated work-related incident.

(citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

### Analysis and Discussion

As noted above, the Defendants contend that each of Goree's claims should be dismissed. Additionally, Long asserts that he is entitled to qualified immunity on the individual capacity claims. The Court will address the Defendants' arguments as to each of Goree's claims in turn.

I.     *Title VII Gender Discrimination*[6]

As a general matter, Title VII "makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" *West v. City of Houston, Tex.*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)); *see also EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *WC&M Enters.*, 496 F.3d at 399 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)) (additional citation omitted).

The Court notes that Goree has asserted two different theories of liability on this claim. First, she asserts liability based upon specific, discrete acts of sexual harassment. Second, she contends that she was subjected to different terms and conditions of employment which created an objectively hostile work environment. *See* [1] at p. 6 ("The Defendant City of Verona

---

[6] For the sake of clarity, the Court notes that Goree's Complaint [1] only alleges liability pursuant to Title VII against the City of Verona—not Long. Goree's decision to do so is in accordance with applicable law, as "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Comms., Inc.*, 339 F.3d 376, 381 (5th Cir. 2003) (citing *Smith v. Amedisys. Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002)). The Court will therefore only analyze potential liability under Title VII as to the City of Verona.

discriminated against Ms. Goree on the basis of her gender by subjecting her to sexual harassment, and different terms and conditions of employment which created an objectively hostile work environment."). The City of Verona asserts that Goree's Title VII claim should be dismissed for two different reasons: (1) because she failed to timely exhaust administrative remedies; and (2) because the claims fail on the merits.

At the outset of its analysis, the Court finds it necessary to clarify the specific purported conduct it will consider. Goree contends that the discrimination to which she was subjected dates all the way back to 2008, while the City takes the position that much, if not all, of the alleged conduct is time-barred. In order to clarify the parameters of the alleged conduct it will consider, the Court will address those arguments first.

"Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not 'reasonably be expected to grow out of the charge of discrimination.'" *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006)). "The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws." *Id*. Additionally, "[t]he Fifth Circuit has observed that 'one of the central purposes of the employment discrimination charge is to put employers on notice of the existence and nature of the charges against them.'" *Clark v. Auger Servs., Inc.*, 443 F. Supp. 3d 685, 701 (M.D. La. 2020) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003)) (additional citations omitted).

Moreover, and particularly important for purposes of the City of Verona's argument in this case, "Title VII's enforcement provisions require that an EEOC charge must be filed within 180

days after the alleged unlawful employment practice has occurred." *Clark*, 443 F. Supp. 3d at 701 (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Clark v. Chickasaw Cnty., Miss.*, 2010 WL 3724301, *6 (N.D. Miss. Sept. 16, 2010) ("Any claims based on acts occurring more than 180 days prior to the date of the EEOC charge of discrimination are statutorily barred."); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) ("Before suing, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC within 180 days of the discriminatory action.") (citations omitted).

One important caveat to the general 180-day deadline is the continuing violation doctrine. That doctrine "provides that when a plaintiff alleges a hostile work environment claim, as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, the entire time period of the hostile work environment may be considered by a court for the purpose of determining liability." *Heath v. Bd. of Supervisors for Southern Univ. and Agric. and Mech. Coll.*, 850 F.3d 731, 736 (5th Cir. 2017) (quoting *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 289 (5th Cir. 2008); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)) (internal quotation marks omitted). Thus, a plaintiff pursuing a hostile work environment claim need only file the EEOC Charge within 180 days of a single act which makes up part of the claim. *See Gregg v. City of Houston, Tex.*, 2021 WL 413541, at *7 (S.D. Tex. Feb 5, 2021). "The end goal of the continuing violation theory is to 'accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Williams v. E.I. du Pont de Nemours and Co.*, 154 F. Supp. 3d 407, 422 (M.D.

La. Dec. 30, 2015) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004)) (additional citations omitted).

Goree contends that the Court should utilize the continuing violation doctrine and consider conduct dating back to 2008 when she was first allegedly subjected to harassment and discrimination. Although the continuing violation doctrine undoubtedly enables plaintiffs to pursue claims that occurred more than 180 days prior to the filing of an EEOC Charge, there are three important limitations to the doctrine. *See*, *e.g.*, *Heath*, 850 F.3d at 738. The Fifth Circuit has explained those limitations as follows:

> First, the plaintiff must demonstrate that the "separate acts" are related, or else there is no single violation that encompasses the earlier acts. Second, the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it, precluding liability for preceding acts outside the filing window. Third, the continuing violation doctrine is tempered by the court's equitable powers, which must be exercised to honor Title VII's remedial purposes without negating the particular purpose of the filing requirement.

*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (citing *Morgan*, 536 U.S. at 110; *Zipes v. Trans Word Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234)) (internal citations and quotation marks omitted).

In light of these limitations, the Court reiterates the timeline of relevant events in this case. Goree contends that Long made inappropriate comments toward her and inappropriately touched her more than ten times in 2008. After she quit her job and filed an EEOC Charge, Leo Mask assumed the role of Chief. Upon discussing the situation with Mask, Goree agreed to withdraw her EEOC Charge and return to work with the Department. She admits that she was not subjected to discrimination or harassment during Mask's tenure which spanned from 2009 until approximately January 2011. She contends that, after becoming Chief, Anthony Anderson made inappropriate

comments to her and propositioned her for sex beginning in January 2011, but she also admits that this conduct ceased in June or July of 2011. During the remainder of Anderson's tenure, which lasted until November 2014, she does not contend that she was subjected to any harassment or discrimination.[7]

Goree contends that she was next subjected to sexual harassment after Long became Chief of Police, which occurred in July 2015. However, she also admits that she did not begin experiencing issues with Long immediately after he became Chief but, instead, that the improper conduct occurred after "give or take, four or five months." [113], Ex. A at p. 44. In fact, she specifically stated that she began having issues with Long in November or December of 2015, which is ultimately what led to her lodging the grievance with the Board. As noted above, Goree also admitted that during Long's tenure as Chief, he did not inappropriately touch her but did make

---

[7]  At this time, the Court feels compelled to note the difficulty it faces in resolving this issue and other issues in this case, particularly due to the inconsistencies in Goree's contentions. For example, as noted above, in her deposition, Goree testified that Anderson did not harass her after June or July 2011, as well as testifying that Long did not engage in any harassment, discrimination, or retaliation during Anderson's tenure (which spanned from January 2011 through November 2014). *See* [113], Ex. A at p. 70-71. However, in her Response Memorandum [128], she makes the conclusory allegation that "Chief Anderson and Defendant Long engaged in sexual harassment and gender discrimination towards Ms. Goree until Chief Anderson resigned as Chief of Police in approximately November 2014." [128] at p. 3. In making this assertion, she cites to page 70 of her deposition, which is the same page cited above where she specifically admitted that she did not experience any harassment from Anderson after June or July of 2011. At this stage in the proceedings, the Court must view the evidence in the light most favorable to Goree, but "it is well established that arguments of counsel and unsworn allegations in the pleadings fail to preclude summary judgment." *Gerald v. Univ. of S. Miss.*, 2014 WL 172113, at *24 (N.D. Miss. Jan. 15, 2014) (citations omitted). Furthermore, "[a] plaintiff cannot create a genuine issue of material fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity*." Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 926 (S.D. Tex. Jan. 15, 2002) (quoting *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999)). Thus, the Court has looked to the evidence in the record—particularly Goree's admissions and her other testimony—in reaching its conclusion. In doing so, the Court remains mindful that, once the moving party comes forward with a properly supported motion for summary judgment, "[t]he nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Nabors*, 2019 WL 2617240 at *1 (quoting *Celotex*, 477 U.S. at 324). The Court also notes that it "has no duty to survey the entire record in search of evidence to support a non-movant's position." *Head v. Smith*, 2021 WL 4168390, at *2 (E.D. La. Sept. 2021) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)) (additional citations omitted). The Court has attempted to comply with each of these principles in reaching its conclusions.

comments toward her which she considered to be harassing and discriminatory. Specifically, she asserts that Long made two sexually harassing comments to her, in addition to making other general comments about how women should not be in her position. She also contends that Long cut her hours, refused to allow her to work overtime, and took other actions that were discriminatory.

Recognizing that the continuing violation doctrine may under certain circumstances warrant consideration of actions that occurred more than 180 days prior to the filing of an EEOC Charge, the Court, when considering the facts of this case, finds that conduct which occurred prior to Long becoming Chief of Police in July 2015 should not be considered. In making this distinction, the Court has considered the above-referenced limitations to the continuing violation doctrine—particularly the significant lapse in time between the alleged conduct and the intervening action of hiring new Chiefs. Specifically, the Court notes that Goree alleges that Long inappropriately touched her and made inappropriate comments toward her in 2008. Thereafter, a new Chief was named, and matters improved for several years. Then, when Anthony Anderson was named Chief, he allegedly propositioned her for sex and made inappropriate comments toward her between January 2011 and June or July 2011, but she admits that she was not subjected to any further harassment by Anderson after that time period. Anderson remained Chief of Police for more than three years after that time—leaving that position in November 2014. In other words, it was a period of several years before Goree was allegedly subjected to further harassment and discrimination. This Court finds the significant lapse in time important. In fact, as previously noted by the District Court for the Middle District of Louisiana, "[t]he Fifth Circuit has held 'that a "three-year break" will defeat any attempt to establish a continuing violation.'" *Adams v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Indus. of the United States and*

*Canada*, 2019 WL 3240028, at *10 (M.D. La. July 18, 2019) (quoting *Butler v. MBNA Tech., Inc.*, 111 F. App'x 230, 234 (5th Cir. 2004)) (additional citation omitted).

Additionally, the Court notes that there were multiple intervening personnel changes during those time periods, including various changes in the role of Chief. *See Stewart*, 586 F.3d at 328 (noting that intervening actions by the employer is a consideration in the application of the continuing violation doctrine). In fact, throughout the approximate eight-year time period between the first alleged conduct (2008) and the filing of her Charge (September 2016), the Chief of Police changed numerous times. Specifically, Long was Interim Chief at the time Goree was hired in 2008. Mask then served as Chief for multiple years. Anderson then served as Chief from January 2011 through November 2014. Johnson then assumed the role but left after only approximately three months. Long then re-assumed the role of Interim Chief and was later named Chief in July 2015.

The Court therefore, recognizing the extensive periods of time between the alleged conduct against Goree, as well as the multiple intervening personnel changes, finds that the conduct which occurred prior to Long resuming the role of Chief in July 2015 should not be considered.[8] In other words, the Court finds that the continuing violation doctrine should not be utilized to capture this conduct. Stated simply, the lapses in time and numerous changes in personnel are such that it cannot be stated that the hostile work environment was continuing dating all the way back to 2008. The Court believes that this conclusion is in accordance with its duty to honor Title VII's remedial purpose without negating the purpose of the exhaustion requirement. *See Stewart*, 586 F.3d at 328.

---

[8] The Court notes that although Goree has made references to the continuing violation doctrine, she has made only conclusory allegations that the Court should consider conduct dating back to 2008 and has not cited any case law wherein any court has applied to continuing violation doctrine in circumstances similar to the case at bar.

Having found that the continuing violation doctrine cannot reach conduct that occurred prior to Long becoming Chief in July 2015, the Court turns to the conduct that occurred after that time. As noted above, Goree admits that Long did not physically touch her in any way after that time. Rather, her allegations after that point consist of comments that Long made, as well as other conduct which she contends created a hostile work environment.

Because Goree admits that no discrete acts of physical sexual harassment occurred after July 2015 (in fact, much earlier but certainly not after July 2015) and she did not file her EEOC Charge until September 27, 2016, her Title VII claim, to the extent that it is based upon discrete acts of physical sexual harassment, can easily be dismissed as untimely. *See*, *e.g.*, *Ernst*, 1 F.4th at 337. Summary judgment is therefore granted on that theory of liability on her Title VII claim.

That leaves the Court with her hostile work environment claim. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *West*, 960 F.3d at 741 (citations omitted). The City of Verona argues that this claim fails for two reasons. First, the City avers that, like the claim based upon discrete actions, Goree failed to timely exhaust administrative remedies as to the hostile work environment claim. Second, the City argues that the claim fails on the merits.

A.    *Timeliness of Hostile Work Environment Claim*

Turning first to the timeliness issue, as noted above, a plaintiff pursuing a hostile work environment claim need only file the EEOC Charge within 180 days of *a single act which makes up part of the claim*. *See Gregg*, 2021 WL 413541 at *7 (emphasis added). The City contends that Goree did not file her EEOC Charge within 180 days of the last act making up her hostile work environment claim, specifically citing her deposition testimony wherein she testified as follows:

14

> **Q.** So then to get back to my question, you are not claiming that anybody from the City of Verona sexually harassed you after January of 2016, correct?
>
> **A.** Yes, sir.

[113], Ex. A at p. 120.

Thus, the City contends that, because Goree admitted in her deposition that the last act of sexual harassment occurred no later than January 2016 and she did not file her EEOC Charge until September 27, 2016—more than 180 days later—the claim is time-barred. *See* [113], Ex. C.

Goree attached to her Response [127] a post-deposition affidavit, wherein she makes further statements regarding the timing of Long's purported conduct. *See* [127], Ex. E. In pertinent part, she testifies as follows:

> 2. In my deposition taken on September 25, 2019, I was asked if Chief J.B. Long had made any sexual remarks or sexually harassed me after January of 2016. I answered that he did not. However, I want to make clear that I did not intend to convey that the sexually hostile work environment to which I was subjected ceased to exist.
>
> 3. After January 2016, as I explained in my deposition, I was subjected to inappropriate comments based upon my sex, having my hours cut, refusing to allow me to work extra shifts and overtime, subjecting me to a non-probable cause and non-random retaliatory drug screen, forcing me to drive and patrol in an unsafe and unroadworthy patrol car, and otherwise subjecting me to discriminatory terms and conditions of employment on the basis of my gender which created an extremely hostile work environment.

*Id.* at p. 1-2.

"The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because 'a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.'" *Free v. Wal-Mart La., LLC*, 815 F. App'x 765, 766 (5th Cir. 2020) (quoting *Doe ex*

*rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). "A court may . . . strike an affidavit that, without explanation, conflicts with prior deposition testimony." *Id*. However, the Fifth Circuit has also "noted that not 'every discrepancy' between a deposition and affidavit should result in exclusion of the affidavit and that slightly inconsistent affidavits may 'explain certain aspects of a party's deposition testimony.'" *Id*. (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)). Instead, the Fifth Circuit instructed that courts should look to whether the affidavit supplements, as opposed to contradicts, the prior testimony. *Id*. (citing *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988)).

In considering whether the sham affidavit doctrine is applicable, the Court has reviewed Goree's deposition transcript beyond the portion emphasized by the City. The Court finds particularly pertinent Goree's testimony when questioned about any other conduct that occurred after January 2016:

> **Q.** Okay. But you're not claiming that your personal disagreements at that point in time rose to a level of sexual harassment or discrimination or retaliation, are you?
>
> **A.** It was not sexual harassment. Again, it was discrimination. He told me that a man – you know, "A lady shouldn't be over a man." He told me, uh, that several times that he would like to have a man as his Assistant Chief instead of a female.
>
> **Q.** Okay. Let's talk about – all right. Before we get into those remarks, did – did – are you claiming J.B. Long took any other retaliatory actions against you after January 28th, 2016?
>
> **A.** Just my hours and his words.

[113], Ex. A at p. 116.

Although recognizing the City's emphasis on the deposition excerpt wherein Goree admitted that no sexual harassment occurred after January 28, 2016, the Court finds that the

16

additional context and explanation given in her deposition makes clear that she does not contend that the hostile work environment ceased to exist at that point. For example, she claims that Long made additional comments after that time and that he took other actions, such as cutting her hours, after January 28, 2016. Thus, while Goree's post-deposition affidavit does, to some extent, contradict the specific language of the particular section of her deposition that the City emphasized, when considering the entire context, including other portions of her deposition testimony, the Court finds that the post-deposition affidavit should not be excluded under the sham affidavit doctrine. Goree has alleged, in her deposition as well as in her post-deposition affidavit, that she was subjected to inappropriate actions which were part of the hostile work environment after January 28, 2016.

As noted above, the continuing violation doctrine permits a plaintiff to include in a hostile work environment claim actions that occurred more than 180 days prior to the filing of the EEOC Charge, so long as at least one action contributing to the hostile work environment claim occurred within that time period. *See, e.g.*, *Hartz*, 275 F. App'x at 289 ("Therefore, as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is timely, the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.") (internal quotation marks omitted). Because at least one act contributing to Goree's hostile work environment claim occurred less than 180 days prior to Goree filing her EEOC Charge, the claim is not time-barred and the Court will consider all conduct that occurred subsequent to Long becoming Chief in 2015.[9]

---

[9]  The Court again notes that "[t]he end goal of the continuing violation theory is to accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Williams*, 154 F. Supp. 3d at 422 (internal quotations marks and citations omitted). The Court finds that this conclusion is in accordance with that end goal.

B.    *Merits of Hostile Work Environment Claim*

The Court will therefore turn to the merits of Goree's hostile work environment claim. A plaintiff seeking to impose liability on a hostile work environment claim must show that:

> (1) she belongs to a protected class; (2) was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) [the defendant] knew or should have known of the harassment and failed to take remedial action.

*Tucker v. United Parcel Serv. Inc.*, 734 F. App'x 937, 941 (5th Cir. 2018) (quoting *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001)).

The City particularly attacks the fourth element—that the harassment affected a term, condition, or privilege of Goree's employment.[10] "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West*, 960 F.3d at 741-42 (quoting *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008)). "The alleged conduct must be objectively and subjectively hostile or abusive." *Id.* (citing *Harris*, 510 U.S. at 21). "The totality of the employment circumstances determines whether an environment is objectively hostile." *Id.* (citing *Harris*, 510 U.S. at 21-22). Although no one single factor is outcome-determinative, the pertinent considerations in this inquiry include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating,

---

[10] The City also makes the contention that the alleged conduct was not based on her gender. To satisfy this element, the plaintiff "must show a nexus between the alleged conduct and her race or gender." *Shobney v. Sessions*, 2018 WL 1915490, at *5 (W.D. Tex. Apr. 23, 2018) (quoting *Gibson v. Verizon Servs. Org., Inc.*, 498 F. App'x 391, 394 (5th Cir. 2012)) (internal citations omitted). Here, although some of the other conduct such as the cutting of hours and refusal to grant overtime requests may not, when considered in isolation, seem to be gender based, the specific alleged comments were sexually harassing and related to Goree's gender, some of them even specifically referencing her gender. The Court therefore rejects the City's argument on this point for summary judgment purposes. At a minimum, a question of fact exists on that issue.

or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 21-22) (internal quotation marks omitted).

At this point, the Court again notes the specific alleged conduct that is relevant—only that conduct which occurred after Long became Chief in July 2015. The relevant allegations include two sexually harassing comments that Long made toward her, several other comments Long made that women should not be in Goree's position, and Long cutting her hours on two occasions. She has also alleged that she was subjected to a drug screen that was not based on probable cause and that she was not permitted to work overtime. The City takes the position that, even taking these allegations as true, they do not rise to the level necessary to preclude summary judgment.

Turning first to the frequency of the conduct, the Court notes that Long allegedly made two sexually harassing comments toward Goree in or around November 2015. He then made several other comments about her gender—specifically that the position which she held should not be occupied by a female. The other alleged conduct, such as cutting her hours, refusing to allow her to work overtime, and subjecting her to a drug screen, occurred in the summer of 2016. Notably, the pertinent conduct did not commence until approximately November or December 2015 and lasted through the summer of 2016. Thus, the pertinent time period is less than one year. Although Goree has not provided specific dates for when the subject conduct occurred, she has alleged that all this conduct occurred during that relatively narrow time period. Considering that multiple events occurred during this narrow window of time, the Court finds that this factor weighs in Goree's favor.

As to the severity of the conduct, the City cites the Fifth Circuit's relatively recent decision in *West*. In *West*, the Fifth Circuit held that "West seeks to impose Title VII liability on her employer because her coworkers passed gas at the dinner table; infrequently slept in their

underwear at the station; made the occasional racially insensitive joke; and brought adult magazines to the station. That is not severe or humiliating under the governing standards." *West*, 960 F.3d at 742. In reaching that decision, the Fifth Circuit noted the Supreme Court's decision in *Faragher*, wherein the Supreme Court held that "[p]roperly applied, the standards for judging hostility will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id*. (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). Stated differently, "[t]he law separates significant from trivial harms. . ." *Molina v. McHugh*, 2013 WL 4012631, at *3 (S.D. Tex. Aug. 5, 2013) (citing *Stewart*, 586 F.3d at 331).

Recognizing this high standard, the Court notes that the two sexual comments directed toward Goree were severe. As noted above, the first alleged comment was a sexual comment related to her loss of weight. In the second alleged comment, Long stated that he could have had sex with Goree if he wanted to. These comments included extremely graphic language related to Goree's anatomy. Although the other comments regarding her gender generally are not *as severe*, the Court finds the nature of these two particular comments to be severe. Furthermore, the other conduct, such as cutting her hours, refusing to allow her to work overtime, and subjecting her to a drug screen, also are not as severe as the initial comments. Reverting back to the first two comments, however, the Court notes that these comments, particularly Long's comment that he could have had sex with her if he wanted to, exceed the ranks of a typical off-hand insensitive joke. In other words, the Court finds that these comments constitute more than the ordinary tribulations of the workplace. *See*, *e.g.*, *West*, 960 F.3d at 742 (citations omitted). Furthermore, taking into account all of the alleged conduct, the Court finds that the subject environment was more severe than the environment address by the Fifth Circuit in *West*. Specifically, the Court notes that the

20

alleged conduct was directly targeted at Goree, as opposed to *West* where much of the conduct was not specifically aimed at the plaintiff.[11] The Court finds that the subject conduct is more significant, as opposed to trivial. *See Molina*, 2013 WL 4012631 at *3 (citation omitted).[12]

As to the third factor, the Court first considers whether there was any physical threat to Goree. Although she makes a general assertion that she was forced to patrol in an unsafe patrol car which, in theory, could constitute a physical threat, she has not provided any details regarding that allegation, instead having made only a conclusory contention on that point. The Court therefore finds that allegation insufficient for summary judgment purposes. Concerning whether the conduct was humiliating, the Court finds that the two sexual comments weigh the most in Goree's favor on this point. The Court finds, however, that the other comments and actions, in isolation, are much less humiliating.

Regarding the fourth factor—whether the conduct unreasonably interferes with the employee's work performance—in addition to the comments, Goree testified as to the difficulties she faced during this time period, such as her hours being cut and overtime requests being denied and instead being given to other personnel. However, the Court also notes that Goree was not

---

[11] The Fifth Circuit has previously taken into account whether the conduct was specifically directed at the plaintiff in determining whether a cognizable hostile work environment claim exists. *See, e.g., Collier v. Dallas Cnty. Hosp. Dist.*, 827 F. App'x 373, 378 (5th Cir. 2020).

[12] Although not a Fifth Circuit decision, the Court also notes a case from the District Court for the Southern District of Texas. *Matthews v. High Island Indep. Sch. Dist.*, 991 F. Supp. 840, 844 (S.D. Tex. Jan. 22, 1998). There, the Plaintiffs alleged that a supervisor "made statements to others such as 'I'm going to hire more men, and tie those elementary teachers' pussies in a knot,' referred to his 'big Italian hairy ass,' and told someone 'Don't mess with [female plaintiff], she is [male employee's] pussy.'" *Id.* Although at the motion to dismiss stage, the District Court noted, "[i]f such allegations are true, the Court is dumbfounded as to how Defendants could possibly suggest that [the plaintiffs] were not subjected to a hostile work environment." *Id.* This Court recognizes that there have been numerous hostile work environment cases decided since *Matthews*; however, the Court notes it as the substance of the alleged comments there are similar to the first two comments at issue in the case *sub judice*.

21

terminated nor did she voluntarily leave her employment with the City.[13] The Court therefore finds that, while Goree did face *some* difficulties, this factor weighs slightly in the City's favor.

The Court is aware that "not all harassment, including simple teasing, offhand comments, and isolated incidents (unless extremely serious), will affect a term, condition, or privilege of employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). However, considering all the evidence before it and its role at this stage of the proceedings, the Court finds that Goree has come forward with sufficient evidence to survive summary judgment on her hostile work environment claim. Stated differently, the Court finds that Goree has come forward with sufficient evidence to create a genuine issue of material fact as to whether "the challenged conduct . . . create[d] an environment that a reasonable person would find hostile or abusive." *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (citing *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996)); *see also Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 400 (5th Cir. 2021).[14] The City's request for summary judgment on the Title VII hostile work environment claim is therefore denied, and Goree will be permitted to proceed to trial on that claim.

## II.    *Title VII Retaliation*

Goree also asserts a claim for Title VII retaliation. Goree's Complaint [1] specifically avers that the Defendants cut her hours, refused to allow her to work extra shifts and overtime, subjected

---

[13] Goree does allege that Long attempted to have her terminated in the summer of 2016, but she did not elaborate on that point in her Response Memorandum [128]. And it is undisputed that she was not terminated at that time.

[14] The Court recognizes that Long denies having made any sexually harassing or discriminatory comments toward Goree. However, at this stage in the proceedings, the Court's role is not to make credibility determinations. In fact, the Court is prohibited from doing so. *See, e.g.*, *EMJ Corp. v. Hudson Specialty Ins. Co.*, 2014 WL 4244007, at *3 (N.D. Miss. Aug. 26, 2014) (citing *Comeaux v. Sutton*, 496 F. App'x 368, 369 (5th Cir. 2012) (per curiam)) (additional citation omitted) ("The Fifth Circuit has stated repeatedly: 'The trial court may not weigh evidence or make credibility determinations when considering a motion for summary judgment.'").

her to a retaliatory drug screen, and "otherwise subject[ed] her to discriminatory terms and conditions of employment[.]" [1] at p. 5-6.

Pursuant to Title VII's antiretaliation provision, protected activity may involve either: "(1) 'opposing any practice made an unlawful employment practice by this subchapter' or (2) 'making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under this subchapter.'" *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. § 2000e-3(a)) (internal punctuation omitted). "Retaliation claims under Title VII are governed by the familiar three-step *McDonnell Douglas* test." *LeMaire v. La. Dep't of Transp. And Dev.*, 480 F.3d 383, 388 (5th Cir. 2007 (citing *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

To establish a *prima face* case of retaliation, a plaintiff must establish that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007)). If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire*, 480 F.3d at 388-89 (citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754-55 (5th Cir. 2005)).

The City argues that summary judgment is appropriate as to this claim on the basis that Goree "has no evidence that any of these alleged retaliatory acts (which are denied) were caused

by her prior complaint against Long. In other words, she has no evidence that any activity protected by Title VII was 'the but-for cause of [any] adverse employment action.' *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004)." [114] at p. 13. Goree did not address the retaliation claim in her Response Memorandum [128]. Therefore, in its Reply [134], Verona takes the position that Goree has abandoned her retaliation claim.

This Court has recognized that the failure to make arguments or offer proof in opposition to a properly supported motion for summary judgment on any claim constitutes an abandonment of that claim. *See Tubwell v. Specialized Loan Serv., LLC*, 2019 WL 1446362, at *3 (N.D. Miss. Mar. 29, 2012) (noting that the non-movant's failure to respond to the moving party's motion for summary judgment on certain claims "amounts to an abandonment of [those] claims"); *see also Scott v. Spencer Gifts, LLC*, 2015 WL 4205242, at *1 (N.D. Miss. July 10, 2015) ("In their response, Plaintiffs have made no argument and offered no proof in support of their claims of intentional infliction of emotional distress and failure to train or supervise, and thus the Court finds these theories to be abandoned."); *Sanders v. Sailormen, Inc.*, 2012 WL 663021, at *3 (N.D. Miss. Feb. 28, 2012) (collecting cases) ("Failure to address a claim results in the abandonment thereof."). Recognizing these authorities, the Court agrees that Goree has abandoned this claim.

However, the Court will nevertheless, out of an abundance of caution, consider the merits of the claim based on the evidence and arguments before it. As to the first element of the *prima facie* case, "an employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any [manner] in an investigation, proceeding[], or hearing under Title VII." *Snyder v. L-3 Commc'ns Vertex Aerospace, LLC*, 2020 WL 869977, at *9 (N.D. Miss. Feb. 21, 2020) (quoting *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (citing 42 U.S.C. §

2000e-3(a)) (internal quotation marks omitted). It is undisputed that Goree lodged a grievance against Long in January 2016, wherein she alleged that she was subjected to a hostile work environment. The Court thus finds that the first element is satisfied.

As to the second element—that the employer took adverse action against her, "[t]he Supreme Court [has] held that 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006)) (additional citation and internal quotation marks omitted). Goree has alleged that her hours were cut, she was subjected to drug screens which were non-random and not supported by probable cause, she was forced to drive an unsafe patrol vehicle, and she was not allowed to work overtime. The Court finds these allegations sufficient to carry Goree's burden at this stage in the proceedings.

Although not making any significant arguments as to the first two *prima facie* elements, the City takes the position that Goree cannot satisfy the third element—the causal connection requirement. Specifically, the City contends that Goree "has no evidence that any of these alleged retaliatory acts (which are denied) were caused by her prior complaint against Long. In other words, she has no evidence that any activity protected by Title VII was 'the but-for cause of [any] adverse employment action.' *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004)." [114] at p. 13.

The Fifth Circuit has recently explained that "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360,

133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)). "However, the but-for standard does not apply at the *prima facie* case stage. Instead, 'at the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action.'" *Id*. (quoting *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 242-43 (5th Cir. 2019)) (internal citation omitted).

Although Goree has not come forward with such a temporal proximity argument, even if she had done so, she still must establish but-for causation to prevail. *See id*. Her failure to respond to the City of Verona's arguments becomes fatal at this point. As noted above, Goree has not come forward with specific evidence or arguments in support of this temporal proximity theory. *See Brown*, 969 F.3d at 577.[15] And "[u]ltimately, in order to survive a motion for summary judgment, a plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id*. (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)) (internal quotation marks omitted). Goree simply has not done so.

The Court also notes that this is the same conduct which she contends was part of her hostile work environment claim. In her argument related to that claim, she takes the position above that this conduct was part of a hostile work environment. It is unclear if she contends that the conduct was retaliatory and/or whether she has any evidence to support that contention. Again, this is where her failure to respond to the City's request for summary judgment on the retaliation claim becomes fatal. There is not substantial evidence before the Court on the question of whether

---

[15] Even if Goree had made arguments and provided proof in support of the temporal proximity theory, the Fifth Circuit has made clear that "temporal proximity . . . is relevant to, but not alone sufficient to demonstrate, pretext." *Brown*, 969 F.3d at 579 (citing *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007)).

the City would have taken the employment actions at issue if she had not lodged her complaint regarding Long's conduct.

Summary judgment is therefore granted on Goree's Title VII retaliation claim. That claim is dismissed.

III.    *Section 1983 Claims*

The Court next turns to Goree's Section 1983 claims. Specifically, she alleges that her Fourteenth Amendment Equal Protection rights were violated because she was "intentionally subject[ed] . . . to sexual harassment, and different terms and conditions of employment on account of her gender." [1] at p. 7. She also asserts a First Amendment claim, alleging that she was retaliated against because she spoke on a matter of public concern.

Before addressing the merits of those claims, the Court first feels compelled to address against whom Goree asserts the claims. The Court will set forth below the full allegations as to each of these claims, as alleged in Goree's Complaint [1]:

> Claim 3 Fourteenth Amendment Denial of Equal Protection
>
> 36.    *The Defendant Long violated* Ms. Goree's Fourteenth Amendment right to equal protection by intentionally subjecting Ms. Goree to sexual harassment, and different terms and conditions of employment on account of her gender.
>
> 37.    *The Defendant Long is liable* to Ms. Goree for violating her equal protection right to be free from intentional discrimination motivated by her gender in public employment.
>
> Claim 4 First & Fourteenth Amendment Retaliation
>
> 38.    *The Defendant Long violated* Ms. Goree's First Amendment and Fourteenth Amendment rights to freedom of speech and equal protection by intentionally subjecting Ms. Goree to [retaliation] for speaking on a matter of public concern.

39. *The Defendant Long is liable* to Ms. Goree for violating her First and Fourteenth Amendment rights to be free from intentional retaliation for speaking on a matter of public concern.

[1] at p. 7-8 (emphasis added).

Although Goree, in her Response Memorandum [128], makes general references to liability against the City under Section 1983, she never alleges claims to that effect in her Complaint [1]. For example, she never references *Monell* liability or any other theory of municipal liability. In fact, as emphasized above, the language of her Complaint [1] simply states that Long is liable for violating her constitutional rights.

The Court notes that Goree had different counsel when her Complaint [1] was initially filed. Perhaps her failure to include claims against the City was a strategic decision made at that time. Although the reason for doing so is unclear, the Court finds that the language of the Complaint [1] clearly does not assert a claim against the City under Section 1983; therefore, the Court sees no need to address whether the City would be liable under Section 1983.[16] Instead, the Court will turn to Goree's allegations related to Section 1983 individual liability against Long. In response to Goree's constitutional claims, Long has raised the defense of qualified immunity.

"The doctrine of qualified immunity protects governmental officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

---

[16] The Court is cognizant of the Supreme Court's instruction that claims should not be dismissed because of an "imperfect statement of the legal theory." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 11, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014) (per curiam). However, this Court finds Goree's complete failure to assert a Section 1983 claim against the City to be distinguishable from an imperfect statement of a legal theory. Consequently, the Court finds that *Johnson* does not warrant a different result under the particular facts of this case.

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). An officer may successfully invoke the defense of qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *see also Cantu v. Rocha*, 77 F.3d 795, 805-06 (5th Cir. 1996).

"Courts generally carry out two steps when determining whether a defendant is protected by qualified immunity. The court asks whether the official 'violated a statutory or constitutional right' and whether 'the right was "clearly established" at the time of the challenged conduct.'" *Caldwell v. Medina*, 2020 WL 4043501, at *8 (W.D. Tex. July 17, 2020) (citing and quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Harlow*, 457 U.S. at 818).

"For a right to be clearly established, 'its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 287 (5th Cir. 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). This is an objective standard with the touchstone being "whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Zadeh v. Robinson*, 928 F.3d 457, 468 (5th Cir. 2019) (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)).

The Supreme Court has on multiple occasions cautioned that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) (citing *Ashcroft*, 563 U.S. at 742); *see also Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 222 (5th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.

29

Ct. 305, 193 L. Ed. 2d 255 (2015)) (noting that the inquiry "must be undertaken in light of the specific context of the case, not a broad general proposition."). "While there need not be a case directly on point, the unlawfulness of the challenged conduct must be 'beyond debate.'" *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citing *District of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018)).

Cognizant of the qualified immunity standard, the Court will consider Goree's Equal Protection and First Amendment retaliation claims in turn.

### A. *Fourteenth Amendment Equal Protection Claim*

As noted above, Goree alleges that Long "violated [her] Fourteenth Amendment right to equal protection by intentionally subjecting [her] to sexual harassment, and different terms and conditions of employment on account of her gender. . . [Long] is liable to [Goree] for violating her equal protection right to be free from intentional discrimination motivated by her gender in public employment." [1] at p. 7. The allegations of Goree's Complaint [1], as well as the arguments raised in her Response Memorandum [128], therefore directly implicate the intersection between Title VII and Section 1983. Relatively recently, the District Court for the Western District of Texas, analyzing Fifth Circuit case law, set forth an in-depth analysis of that intersection. *Crain v. Judson Indep. Sch. Dist.*, 2018 WL 1612857, at *4 (W.D. Tex. Apr. 3, 2018). Although it will not repeat that analysis here, this Court notes that the District Court for the Western District of Texas ultimately concluded as follows:

> It appears settled that a public employee cannot sue his employer under § 1983 for violating Title VII. And although there remains some uncertainty, most cases hold that a public employee can bring parallel causes of action against the government employer under Title VII (for Title VII violations) and under § 1983 for separate constitutional violations, even if both claims are premised on the same facts and conduct, though these cases generally involve Title VII claims against public employers and § 1983 claims against non-

> employer individuals. *Robertson v. Bd. of Sup'rs of La. State Univ.*, 273 F.3d 1108 (5th Cir. 2011) (unpublished) (holding that Title VII does not provide the exclusive remedy for race discrimination in employment even when the § 1983 claims are based on the same facts)[.]

*Id*. at *4 (additional citations omitted). Other district courts across the Fifth Circuit have reached this same conclusion. *See*, *e.g.*, *Kabir v. Singing River Health Sys.*, 2019 WL 6702433, at *4 (S.D. Miss. Dec. 9, 2019) (quoting *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 549 (5th Cir. 1997) ("Title VII is the exclusive remedy for a violation of its own terms, but when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII."); *Bowie v. Hodge*, 2020 WL 4747662, at *6 (E.D. La. Aug. 17, 2020) (citations omitted) ("A plaintiff may pursue both section 1983 and Title VII claims when the employer's conduct violates both Title VII and a separate constitutional or statutory right. While it is accurate that Title VII provides the exclusive remedy for a violation of its own terms, a § 1983 claim is still available when a public employer's conduct violates both Title VII and a separate constitutional or statutory right."). Thus, relying on these authorities, the Court finds that Goree may, pursuant to Section 1983, pursue her claims for separate constitutional violations against Long.

Turning to the merits of her Fourteenth Amendment claim against Long, "Section 1983 and Title VII sexual-harassment claims are analyzed under the same standard, as the two are 'parallel causes of action.'" *Myles v. Mason*, 2020 WL 7265379, at *3 (S.D. Miss. Dec. 10, 2020) (quoting *Laurderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007)) (additional citation omitted); *see also Weikel v. Jackson Pub. Sch. Dist.*, 2020 WL 2027213, at *6 (S.D. Miss. Apr. 27, 2020) ("Indeed, section 1983 and title VII are parallel causes of action.") (citations and internal quotation marks omitted).

31

Again, Long has invoked qualified immunity as a defense to this claim, specifically arguing that "Goree has no evidence to suggest Long committed any acts against her that were objectively unreasonable under clearly established law." [114] at p. 17.

Although not cited by either party, the Court finds instructive the Fifth Circuit's decision in *Lauderdale*, 512 F.3d 157. There, the Fifth Circuit analyzed qualified immunity in the context of hostile work environment in public employment. *Id.* at 166. In pertinent part, the Fifth Circuit held:

> Answering the first question in the qualified immunity analysis is easy in this case. *The right to be free of sexual harassment that creates a hostile work environment is clearly established and has been since the Court decided Meritor in 1986.* Answering the second question in the qualified immunity analysis is only slightly more complicated. Although no one thinks that sexual harassment is objectively reasonable, the question is whether a reasonable person would have thought Arthur's specific acts constituted sexual harassment; that brings us back to the original question whether his behavior amounted to sexual harassment under title VII or § 1983.

> *Given that actionable sexual harassment under title VII must be "objectively . . . offensive," such behavior cannot be "objectively reasonable" for purposes of the qualified immunity inquiry.* Thus, qualified immunity can never offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the "objectively reasonable[.]" Because we have already determined that Arthur's alleged behavior is actionable under title VII and § 1983, we have necessarily determined that such behavior was objectively offensive and, therefore, not objectively reasonable. Thus, he is not entitled to qualified immunity.

*Id.* at 166-67 (internal citations omitted) (emphasis added).

The District Court for the Southern District of Mississippi has recently addressed qualified immunity in the context of hostile work environment. *See Myles*, 2020 WL 7265379. *Myles* involved a sexual harassment/hostile work environment claim asserted by a lieutenant of a sheriff's department against the sheriff, wherein the lieutenant alleged that her supervisor sent inappropriate

text messages and propositioned her for sex multiple times on a frequent basis. *Id*. at *1. After finding that the lieutenant had come forward with sufficient evidence to preclude summary judgment on the hostile work environment claim, the district court turned to the sheriff's request for qualified immunity. Id. at *6. The district court specifically held:

> As to Myles's sexual-harassment claims against Mason in his individual capacity, he is not entitled to qualified immunity. The Fifth Circuit has held that "qualified immunity can never offer protection for sexual harassment because, if it is actionable at all, the harassment is by definition objectively offensive and unreasonable, and qualified immunity protects only the 'objectively reasonable.'" *Lauderdale*, 512 F.3d at 166-67. Because Myles presents a fact issue on her sexual-harassment claims, Mason is not entitled to qualified immunity under Rule 56.

*Id*.

In referencing *Myles*, this Court is aware that it was decided in December 2020—well after the conduct at issue in this case. This Court is also cognizant that, when analyzing qualified immunity, it must "consider whether the defendant's actions were objectively unreasonable in light of clearly established law *at the time of the conduct in question*." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (emphasis added). In other words, "reasonableness is judged against the backdrop of the law *at the time of the conduct*." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) (emphasis added)

Although aware of this standard, the Court notes that the Fifth Circuit's opinion in *Lauderdale*, upon which the District Court for the Southern Mississippi relied, was issued in 2007—well prior to the subject conduct in this case. The Court simply notes this distinction to make clear that it is not relying on *Myles* as the basis for determining whether the law was "clearly established" but, rather, finds *Myles* to be an illustration of the appropriate manner to address qualified immunity in the hostile work environment context, in light of the Fifth Circuit's decision

33

in *Lauderdale*. Other district court cases have also analyzed *Lauderdale* in this same manner. *See*, *e.g.*, *Hale v. Tex. Dep't of Criminal Justice*, 2019 WL 7500593, at *15 (N.D. Tex. Dec. 3, 2019) (noting—in report and recommendation which was ultimately adopted in full—that the Fifth Circuit's opinion in *Lauderdale* "removed any doubt" as to whether qualified immunity is available "where a plaintiff has alleged actionable sexual harassment that created a hostile work environment"); *Taylor v. Miller*, 2014 WL 2815701, at *3 (S.D. Miss. June 23, 2014) (denying qualified immunity based on *Lauderdale*).

Therefore, relying on the above analysis that Goree has presented sufficient evidence to preclude summary judgment on her hostile work environment claim, along with the Fifth Circuit's directive in *Lauderdale*, the Court finds that Long is not entitled to qualified immunity on the Fourteenth Amendment Equal Protection claim. Summary judgment is denied as to that claim, and Goree will be permitted to proceed to trial.

### B.  *First Amendment and Fourteenth Amendment Retaliation*

Finally, Goree contends that "Long violated [her] First Amendment and Fourteenth Amendment rights to freedom of speech and equal protection by intentionally subjecting [her] to retaliation for speaking on a matter of public concern." [1] at p. 7.[17]

Turning to the first prong of the qualified immunity analysis—whether Long violated a federal constitutional right—the Court notes that, "[a]s a general matter the First Amendment prohibits government official from subjecting an individual to retaliatory actions for engaging in protected speech." *Batyukove v. Doege*, 994 F.3d 717, 730-31 (5th Cir. 2021) (quoting *Nieves v.*

---

[17] Although Goree styled this claim as a First *and* Fourteenth Amendment claim, First Amendment retaliation standards are applicable. *See*, *e.g.*, *Montgomery v. Mississippi*, 498 F. Supp. 2d 892 (S.D. Miss. 2007) ("While [the plaintiff's] First Amendment claims are properly considered Fourteenth Amendment due process claims, the Court shall analyze them separately as First Amendment claims due to the standards unique to First Amendment retaliation claims."). The Court will therefore analyze the claim under the First Amendment only.

*Bartlett*, --- U.S. ---, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). "To succeed in a First Amendment retaliation claim under § 1983, a public employee must show: (1) [she] suffered an adverse employment action; (2) [she] spoke as a citizen on a matter of public concern; (3) [her] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

Particularly concerning the second element, "[s]peech is not a matter of public concern if it is made solely in 'furtherance of a personal employer-employee dispute.'" *Gibson v. Kilpatrick*, 838 F.3d 476, 486-87 (5th Cir. 2016) (quoting *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005)). This principle has been reiterated by the Fifth Circuit various times. *See, e.g.*, *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1996) (quoting *Page v. DaLaune*, 837 F.2d 233, 237 (5th Cir. 1988)) ("The courts will not interfere with personnel decisions when a public employees speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest."); *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999) (finding that speech made in furtherance an employer-employee dispute was not speech on a matter of public concern). And "the Fifth Circuit has noted that speech regarding 'internal personnel disputes and working conditions' will not ordinarily involve the public concern." *Moreau v. St. Landry Parish Fire Dist. No. 3*, 413 F. Supp. 3d 550, 561 (W.D. La. Sept. 10, 2019) (quoting *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001)).

Despite Long's assertion that Goree's speech was not protected by the First Amendment because it constituted an employer/employee dispute outside of the First Amendment's scope, Goree did not address that claim in her Response Memorandum [128]. As noted above, her failure

to respond is sufficient for this Court to find that she has abandoned that claim. *See Tubwell*, 2019 WL 1446362 at *3. In addition, the claim also fails on the merits, as there is no evidence before the Court to create a genuine issue of material fact that Goree engaged in speech on a matter of public concern.

Summary judgment is therefore granted on Goree's First Amendment retaliation claim. That claim is dismissed.

*Conclusion*

For the reasons set forth above, the Defendants' Joint Motion for Summary Judgment [113] is GRANTED IN PART and DENIED IN PART. Goree will be permitted to proceed to trial on her Title VII hostile work environment claim against the City of Verona, subject to the limitations outlined above. All other claims against the City of Verona are DISMISSED *with prejudice*. Goree will also be permitted to proceed to trial on her Section 1983 Fourteenth Amendment hostile work environment claim against J.B. Long in his individual capacity. Her Section 1983 First Amendment retaliation claim against J.B. Long in his individual capacity is DISMISSED *with prejudice*.

SO ORDERED, this the 28th day of September, 2021.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE